02-10-114-CV














 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-10-00114-CV

 

 


 
 
 In the Interest of B.A., a Child
 
 
  
 
 
  
 
 


 

 

------------

 

FROM THE
323rd District Court OF Tarrant
COUNTY

------------

MEMORANDUM OPINION[1]

------------

          Appellant C.W.
appeals the trial court’s order terminating her parental rights to her
daughter, B.A.  In a single issue, C.W. challenges the legal and factual sufficiency of the
evidence to support the trial court’s family code section 161.001(2) finding
that termination of the parent-child relationship between C.W.
and B.A. is in B.A.’s best interest.  We
will affirm.

          B.A. was born in November 2008.  She was approximately sixteen months old at
the time of the termination trial in March 2010.  B.A.’s mother is twenty-four-year-old C.W.  D.A. is B.A.’s
alleged biological father.

          C.W. began
using cocaine and ecstasy, her drugs of choice, at age nineteen or twenty.[2]  She tested positive for cocaine and opiates
when she was about five months’ pregnant with B.A. and admitted at trial that
she used cocaine “[p]robably daily” at that time.  C.W. knew she was
pregnant with B.A. when she used illegal drugs but did so “[b]ecause [she] really didn’t want [her] baby at first.”  C.W. claimed she quit
using illegal drugs about two to three months before B.A. was born.

          B.A. tested positive for cocaine when
she was born.  CPS opened a case for her,
and she was voluntarily placed with C.W.’s uncle’s
wife, C.A.  At some point thereafter,
C.A. turned B.A.’s care over to C.W.’s friend, L.S.  In October
2009, B.A. was placed with her paternal grandmother, S.A., where she remained
until trial.

          TDFPS
developed a service plan for C.W., which included a
psychological evaluation, a drug and alcohol assessment with Merit Family
Services, drug tests, individual counseling, and parenting classes.  C.W. completed the psychological
evaluation, performed a few individual counseling sessions, did not follow
through with additional parenting classes, and attended Merit sporadically before
being discharged from the program the month before trial for not completing her
services.

          C.W.
testified that she did not participate in Merit’s services much during January,
February, and March 2009 and that she used drugs during that time, including
ecstasy.  C.W. refused
to submit to drug tests in October 2009 and on November 14, 2009, but she
performed a drug test on November 19, 2009, and tested positive for cocaine,
opiates, and OxyContin.  C.W. tested positive
for cocaine and opiates again in February 2010 and tested positive for cocaine,
opiates (morphine and heroin metabolite), and benzoylmethylecgonine
in March 2010, the same month of the trial. 
D.A. and Shelly,[3] C.W.’s friend, both tested positive for drugs at some point
during the case.  D.A. executed an affidavit
during trial voluntarily relinquishing his parental rights to B.A.

          On March 23, 2010, the trial court
signed an order terminating C.W.’s parental rights to
B.A., finding by clear and convincing evidence that C.W.
had (1) knowingly placed or knowingly allowed B.A. to remain in conditions
or surroundings that endangered B.A.’s physical or emotional well-being, (2) engaged
in conduct or knowingly placed B.A. with persons who engaged in conduct that
endangered B.A.’s physical or emotional well-being, and (3) caused B.A. to
be born addicted to alcohol or a controlled substance.  See
Tex. Fam. Code Ann. § 161.001(1)(D), (E), & (R)
(Vernon Supp. 2010).  The trial court
also found by clear and convincing evidence that termination of the parent-child
relationship between C.W. and B.A. is in B.A.’s best
interest.  Id. § 161.001(2).  C.W. appeals.

          In her only issue, C.W.
argues that the evidence is legally and factually insufficient to support the
trial court’s finding that termination of the parent-child relationship between
her and B.A. is in B.A.’s best interest.[4]

          In
proceedings to terminate the parent-child relationship brought under section
161.001 of the family code, the petitioner must establish one ground listed
under subsection (1) of the statute and must also prove that termination
is in the best interest of the child.  Id. § 161.001; In
re J.L., 163 S.W.3d 79,
84 (Tex. 2005).  Both elements
must be established.  Tex.
Dep’t of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987).

          Termination decisions must be
supported by clear and convincing evidence. 
Tex. Fam. Code Ann. §§ 161.001, 161.206(a)
(Vernon 2008).  Evidence is clear
and convincing if it “will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.” Id. § 101.007 (Vernon 2008).

          In reviewing the evidence for legal
sufficiency in parental termination cases, we must determine whether the
evidence is such that a factfinder could reasonably
form a firm belief or conviction that the grounds for termination were
proven.  In re J.P.B., 180 S.W.3d 570, 573
(Tex. 2005).  We must review all
the evidence in the light most favorable to the finding and judgment.  Id. 
This means that we must assume that the factfinder
resolved any disputed facts in favor of its finding if a reasonable factfinder could have done so.  Id. 
We must also disregard all evidence that a reasonable factfinder could have disbelieved.  Id. 
We must consider, however, undisputed evidence even if it is contrary to
the finding.  Id.  That is, we must consider evidence favorable
to termination if a reasonable factfinder could, and
disregard contrary evidence unless a reasonable factfinder
could not.  Id.  We
must therefore consider all of the evidence, not just that which favors the
verdict.  Id.  But we cannot weigh witness credibility issues
that depend on the appearance and demeanor of the witnesses, for that is the factfinder’s province. 
Id. at 573, 574.  And even when credibility issues appear in
the appellate record, we must defer to the factfinder’s
determinations as long as they are not unreasonable.  Id. at 573.

          In reviewing the evidence for factual
sufficiency, we must give due deference to the factfinder’s
findings and not supplant the
judgment with our own.  In re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006).  We must determine whether, on the entire
record, a factfinder could reasonably form a firm
conviction or belief that the termination of the parent-child relationship
would be in the best interest of the child. 
Tex. Fam. Code Ann. § 161.001(2); In re C.H., 89 S.W.3d 17, 28 (Tex.
2002).  If, in light of the entire
record, the disputed evidence that a reasonable factfinder
could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief
or conviction in the truth of its finding, then the evidence is factually
insufficient.  H.R.M.,
209 S.W.3d at 108.

          There is a strong presumption that
keeping a child with a parent is in the child’s best interest.  In re R.R., 209 S.W.3d 112, 116 (Tex.
2006).  Prompt and
permanent placement of the child in a safe environment is also presumed to be
in the child’s best interest.  Tex. Fam. Code Ann. § 263.307(a), (b) (Vernon 2008) (listing factors
that should be considered in evaluating the parent’s willingness and ability to
provide the child with a safe environment).  Nonexclusive factors that the trier of fact in a termination case may use in determining
the best interest of the child include:  (A) the
desires of the child; (B) the emotional and physical needs of the child
now and in the future; (C) the emotional and physical danger to the child
now and in the future; (D) the parental abilities of the individuals
seeking custody; (E) the programs available to assist these individuals to
promote the best interest of the child; (F) the plans for the child by
these individuals or by the agency seeking custody; (G)       the stability of the home or proposed
placement; (H)          the acts or
omissions of the parent which may indicate that the existing parent-child
relationship is not a proper one; and (I) any excuse for the acts or
omissions of the parent.  Holley v. Adams, 544 S.W.2d 367,
371–72 (Tex. 1976).  These factors
are not exhaustive; some listed factors may be inapplicable to some cases;
other factors not on the list may also be considered when appropriate.  C.H., 89 S.W.3d at 27.  Furthermore, undisputed evidence of just one
factor may be sufficient in a particular case to support a finding that
termination is in the best interest of the child.  Id. 
On the other hand, the presence of scant evidence relevant to each
factor will not support such a finding.  Id.

          The
record demonstrates that C.W. has engaged in a
continuing course of illegal drug use: 
she used illegal drugs before she was pregnant with B.A.; while she was
pregnant with B.A.; and after she was pregnant with B.A,
including in the same month of the termination trial.  C.W.’s knowing use
of illegal drugs while she was pregnant with B.A. caused B.A. to test positive
for cocaine when she was born.  C.W. also associated with individuals who tested positive
for illegal drugs (D.W. and Shelly) and admitted that
she has friends who can get drugs for her. 
At trial, C.W. denied that her use of illegal
drugs is bad for her and even admitted that she continues to use illegal
drugs.  She testified:

          Q. 
All right.  You said that CPS says
that drugs are bad.  Do you think drugs
are bad?

 

          A. 
I think anything is bad.

          Q. 
All right.

          A. 
But that would be most of y’all’s opinion.  I
used the drug, so, obviously, it’s not bad to me because I continue to use.  (emphasis added).

 

Further,
and significantly, C.W. testified that she did not share TDFPS’s
opinion that it is in B.A.’s best interest to be raised in a home without any
drug use.  She testified:

          Q. 
Do you believe that it is in [B.A.’s] best interest to be raised in a
home without any drug use?

 

          A.  [B.A.], yes.  I mean, that would be y’all’s opinion.

          Q. 
But that is also your opinion; is that right?

          A. 
No.  It’s not. 
Because y’all try to make drugs to be something bad.  Like if you’re high, you can’t provide for
your child and that’s a lie.  (emphasis added).

 

          Aside from C.W.’s
admitted continuing illegal drug use and denial that it is in B.A.’s best
interest to be raised in a home without any illegal drug use, the trial court
admitted a judgment convicting C.W. of theft by check
and a judgment adjudicating her guilty of prostitution.  Further, C.W.
testified that she does not have a job but that she works with her uncle
cleaning houses sometimes, that she does not have a bank account, that she has
only $100 to her name, and that she owns a car but does not have car insurance.
 A TDFPS
employee testified that it is in B.A.’s best interest to terminate C.W.’s parental rights, and S.A. testified that it is in
B.A.’s best interest to be raised by her and that she wants to adopt B.A. if
B.A. becomes available for adoption.

          Considering the relevant statutory
factors in evaluating C.W.’s willingness and ability
to provide B.A. with a safe environment and the Holley factors—including the emotional and physical needs of B.A.
now and in the future, the emotional and physical danger to B.A. now and in the
future, C.W.’s parental abilities, and the acts or
omissions of C.W. which may indicate that the
existing parent-child relationship is not a proper one—we hold that, in light
of the entire record and giving due consideration to evidence that the trial
court could have reasonably found to be clear and convincing, the trial court
could reasonably have formed a firm belief or conviction that termination of C.W.’s parental rights to B.A. is in B.A.’s best interest.  Accordingly, the evidence is legally and
factually sufficient to support the trial court’s section 161.001(2) best
interest finding.  See, e.g., In re D.M.,
58 S.W.3d 801, 815 (Tex. App.—Fort Worth 2001, no pet.)
(holding evidence sufficient to support jury’s best
interest finding); In re J.W., No. 02-08-00211-CV, 2009 WL 806865, at *6–7 (Tex.
App.—Fort Worth Mar. 26, 2009, no pet.) (mem.
op.) (holding evidence sufficient to support trial
court’s best interest finding).  We
overrule C.W.’s only issue and affirm the trial court’s
order terminating the parent-child relationship between C.W.
and B.A.

 

 

 

BILL MEIER
JUSTICE

 

PANEL: 
LIVINGSTON, C.J.;
DAUPHINOT and MEIER, JJ.

 

DELIVERED:  December 16, 2010











[1]See Tex. R. App. P. 47.4.





[2]C.W. also used marijuana.





[3]We
use an alias (Shelly) to refer to C.W.’s friend
because her initials are identical to those of B.A.’s paternal grandmother,
S.A.

 





[4]C.W. identifies three additional issues in the “Issues
Presented” section of her brief that challenge the sufficiency of the evidence
to support the trial court’s family code section 161.001(1)(D), (E), and (R)
findings, but she does not include any argument on these issues in her
brief.  To the extent C.W.
intended to raise these three issues, they are waived for noncompliance with
rule of appellate procedure 38.1(i) and for
inadequate briefing.  See Tex. R. App. P. 38.1(i) (requiring appellant’s brief to contain a clear and
concise argument for the contentions made, with appropriate citations to
authorities and to the record); Fredonia
State Bank v. Gen. Am. Life Ins. Co., 881 S.W.2d
279, 284 (Tex. 1994) (discussing “long-standing rule” that issue may be waived
due to inadequate briefing).